IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| EDDIE POWELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | [PUBLISH] |
| KIM T. THOMAS, Interim | ) | |
| Commissioner, Alabama Department | ) | |
| of Corrections, *et al.*, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| and | ) | CASE NO.  2:11-CV-376-WKW |
| | ) | |
| JASON ORIC WILLIAMS, | ) | |
| | ) | |
| Intervenor-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KIM T. THOMAS, Interim | ) | |
| Commissioner, Alabama Department | ) | |
| of Corrections, *et al.*, | ) | |
| | ) | |
| Intervenor-Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

## I.  INTRODUCTION

Jason Oric Williams is scheduled for execution by lethal injection on Thursday,

May 19, 2011, at 6:00 p.m. Central Daylight Time, under an Alabama sentence of

death.  On Friday afternoon, May 13, 2011, at 4:41 p.m., Williams filed a motion to

intervene in death row inmate Eddie Powell's case (which had been filed at 2:44 p.m. the same afternoon and which bears the same case number) with a complaint and motion to stay execution attached.  Due to the lateness of the litigation hour, the motion to intervene has been granted by separate order.  This opinion addresses Williams's motion for stay of execution (Doc. # 6), which has been fully briefed (Docs. # 7, 8.)  The merits of the complaint, framed under the rubric of 42 U.S.C. § 1983, are not directly at issue, though the merits framework is necessarily involved in the substantial likelihood of success analysis.

Williams does not challenge his sentence of death or even the state of Alabama's decision to implement lethal injection as a method of execution under its laws.  Williams challenges only the change in one of the drugs used in the lethal injection protocol.  It is undisputed that Williams will be the first Alabama prisoner executed using pentobarbitol as the first drug in the three-drug lethal injection sequence, in place of sodium thiopental which has been used in all twenty-seven lethal injection executions in Alabama.  Williams asserts that there is no assurance that his execution using pentobarbitol will comply with constitutional requirements.

Williams is unable to show a substantial likelihood of success on the merits of his claim, and there is insufficient time to consider his claims without the entry of a stay of execution.   The motion for stay of execution, therefore, is due to be denied.

## II.  JURISDICTION AND VENUE

Subject matter jurisdiction is exercised pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3).  The parties do not contest personal jurisdiction or venue, and the court finds adequate allegations in support of both.

## III.  STANDARD FOR REVIEWING
## A MOTION TO STAY EXECUTION

This opinion is addressed solely to Williams's motion to stay his execution. Although the Supreme Court of the United States has held that a death row inmate may challenge the constitutionality of execution methods through a 42 U.S.C. § 1983 action, a stay "is not available as a matter of right," even where execution is imminent.  *Hill v. McDonough*, 547 U.S. 573, 584 (2006).  Rather, "a stay of execution is an equitable remedy[,]" and "equity must be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts." *Id.*; *see also Thompson v. Wainwright*, 714 F.2d 1495, 1506 (11th Cir. 1983) ("Each delay, for its span, is a commutation of a death sentence to one of imprisonment.").  Additionally, not only the state, but also the "victims of crime have an important interest in the timely enforcement of a sentence." *Hill*, 547 U.S. at 584.

A motion for a stay filed by a death row inmate who challenges the method of his execution is treated the same as any other motion for a stay.  Hence, a death row

inmate is afforded no preferential treatment by his filing of a motion to stay, and all requirements for a stay must be satisfied. *Hill*, 547 U.S. at 584. The requirements mirror those applicable to obtaining injunctive relief. *Grayson v. Allen*, 491 F.3d 1318, 1322 (11th Cir. 2007) ("The equitable principles at issue when inmates facing imminent execution delay in raising their § 1983 method-of-execution challenges are equally applicable to requests for both stays and injunctive relief."). This means that before a court can issue a stay, it must consider whether the movant has shown "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005); *see also Hill*, 547 U.S. at 584 ("[I]nmates seeking time to challenge the manner of their execution must satisfy all of the requirements for a stay, including showing a significant possibility of success on the merits."). And, the movant must clearly carry the burden of persuasion in order for the court to grant a stay. *See Hill*, 547 U.S. at 584.

Finally, when a motion for a stay of execution is filed on the eve of the execution, "the extent to which the inmate has delayed unnecessarily in bringing the claim" must be considered. *Nelson v. Campbell*, 541 U.S. 637, 649 (2004). A

4

"strong equitable presumption" applies "against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay." *Hill*, 547 U.S. at 584 (quoting *Nelson*, 541 U.S. at 650); *see also Gomez v. U.S. Dist. Court for N. Dist. of Calif.*, 503 U.S. 653, 654 (1992) (*per curiam*) (noting that the "last-minute nature of an application" or an applicant's "attempt at manipulation" of the judicial process may warrant the denial of a stay).

## IV.  BACKGROUND

The full details of Williams's crimes are set forth in *Williams v. Allen*, 598 F.3d 778, 782-85 (11th Cir. 2010) and *Williams v. State*, 710 So. 2d 1276, 1290-93 (Ala. Crim. App. 1996).  In short, on the morning of February 15, 1992, Williams shot six people with a .22 automatic rifle, killing four of them and wounding two others, including at least one minor child.

On November 11, 1992, Williams was convicted of multiple capital offenses, and on December 1, 1992, he was sentenced to death.  *Williams*, 598 F.3d at 787. Both the Alabama Court of Criminal Appeals and the Alabama Supreme Court affirmed Williams's convictions and death sentence on direct appeal.  *Williams*, 710 So. 2d at 1349; *aff'd*, *Ex parte Williams*, 710 So. 2d 1350, 1357 (Ala. 1997). Williams's conviction and sentence became final on June 15, 1998, when the United

States Supreme Court denied his petition for a writ of certiorari. *Williams v. Alabama*, 524 U.S. 929 (1998).

From 1999 to 2004, Williams pursued a state habeas petition asserting ineffective assistance of counsel. Williams's state habeas petition was denied by the trial court; the Alabama Court of Criminal appeals affirmed the trial court; and the Alabama Supreme Court denied his petition for a writ of certiorari on October 1, 2004. *Williams*, 598 F.3d at 787. Williams then filed a petition for a writ of federal habeas corpus in the United States District Court for the Southern District of Alabama pursuant to 28 U.S.C. § 2254. Williams's federal habeas corpus petition was denied by the district court in 2007. On March 4, 2010, the Eleventh Circuit affirmed the district court's denial of Williams's petition, and on January 10, 2011, the Supreme Court of the United States denied his petition for a writ of certiorari on his habeas claims. *Williams v. Allen*, 131 S. Ct. 906 (2011).

On January 11, 2011, the state of Alabama filed a motion to set an execution date for Williams with the Alabama Supreme Court. (Williams's Compl. ¶ 17.) Around that same time, news reports began to surface that states were experiencing a shortage of sodium thiopental, a drug widely used in execution by lethal injection, due to Hospira Inc.'s decision to cease manufacturing the drug. (*See, e.g.,* Defs.' Opp. to Mot. for Stay, Exs. B-C.) On January 25, 2011, the state of Alabama, along

with twelve other states, sent a letter to Attorney General Eric Holder notifying him that "[s]odium thiopental is in very short supply worldwide, and for various reasons, essentially unavailable on the open market." (Williams's Compl., Ex. A, at 1.) The letter requested the Attorney General's "assistance in identifying an appropriate source for sodium thiopental or making supplies held by the Federal Government available to the States." (Williams's Compl., Ex. A, at 1.) The Alabama Department of Corrections' ("ADOC") previous lethal injection executions were conducted using a three-drug sequence of sodium thiopental, pancuronium bromide, and potassium chloride. (Williams's Compl. ¶ 30.)

On March 15, 2011, the ADOC received eight grams of sodium thiopental from the Tennessee Department of Corrections. (Williams's Compl. ¶ 20.) On March, 22, 2011, the Tennessee Department of Corrections's sodium thiopental from which these eight grams were derived was seized by the United States Drug Enforcement Agency ("DEA"). (Williams's Compl. ¶ 20.) Sometime between March 15 and 22, 2011, the DEA contacted the ADOC concerning these eight grams of sodium thiopental, and the ADOC surrendered it to the DEA. (Defs.' Opp. to Mot. for Stay, Ex. A.) Williams alleges that the expiration date on all of the remaining sodium thiopental in the ADOC's possession was April 1, 2011. (Williams's Compl. ¶ 22.)

On April 15, 2011, the Alabama Supreme Court set Williams's execution for May 19, 2011.  (Williams's Compl. ¶ 23.)  On April 22, 2011, based on public documents received from Tennessee, Williams's counsel sent a letter to Attorney General Eric Holder requesting an investigation into Alabama's receipt of sodium thiopental from Tennessee.  (Williams's Compl., Ex. C.)  On April 26, 2011, the ADOC issued a press release stating that it had previously received a small amount of sodium thiopental from Tennessee, that it had surrendered that sodium thiopental to the DEA, and that the ADOC "ha[d] amended its execution protocol to allow for the use of pentobarbital for future executions."  (Defs.' Opp. to Mot. for Stay, Ex. A.)

On May 2, 2011, six days after the ADOC's press release, Williams filed a petition for a stay of execution to the Alabama Supreme Court, "requesting that the Alabama Supreme Court stay the execution until the State of Alabama provide[s] a copy of its execution protocol and a determination [is] made as to whether that protocol complie[s] with constitutional standards."  (Williams's Compl. ¶ 26.)  The state filed a brief in opposition to Williams's petition; Williams replied; and on May

12, 2011, the Alabama Supreme Court denied the petition for a stay of execution, with no dissent and one recusal.[1]   (Williams's Compl. ¶¶ 26, 27; Ct.'s Exs (Doc. # 9).)

On Friday, May 13, 2011, at 2:44 p.m., Plaintiff Eddie Powell filed a § 1983 suit, not at issue in this opinion, against Kim Thomas, Interim Commissioner of the ADOC, and Anthony Patterson, Warden of Holman Correctional Facility, alleging that the ADOC's lethal injection protocol violates his right to be free from cruel and unusual punishment and right to due process under the United States Constitution. (Powell's Compl. ¶ 1.)  On that same Friday afternoon, at 4:41 p.m., Williams filed an Emergency Motion to Intervene in Powell's suit, which the court previously

---

[1] Williams admits that his petition to the Alabama Supreme Court challenged the constitutionality of Alabama's revised lethal injection protocol and that this petition was denied. (Williams's Compl. ¶¶ 26-27.)  Further, it is clear that his petition to the Alabama Supreme Court was not one sounding in habeas corpus.  Despite that admission, Defendants do not assert *res judicata* or collateral estoppel in opposition to Williams's instant § 1983 suit and motion for a stay of execution.  Given that *res judicata* is an affirmative defense that the defendant bears the burden of proving, the court notes, but does not address, that issue.  *See Stewart v. Brinley*, 902 So. 2d 1, 11 (Ala. 2004); *see also Brown v. R.J. Reynolds Tobacco Co.*, 611 F.3d 1324, 1331 (11th Cir. 2010) ("[A] federal court must give preclusive effect to a state court judgment to the same extent as would courts of the state in which the judgment was entered.") (internal quotation marks and citations omitted).

Likewise, the court declines to apply the narrow *Rooker-Feldman* doctrine because Williams does not identify or complain of an injury caused by the Alabama Supreme Court's decision, but rather complains of the future conduct of the ADOC officials in implementing the lethal injection procedure.  *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 291 (2005) (holding that the *Rooker-Feldman* doctrine is limited and confined to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments").  Further, a district court is not denied subject-matter jurisdiction because "a party attempts to litigate in federal court a matter previously litigated in state court."  *Id.* at 293. Rather, state principles of preclusion, not *Rooker-Feldman*, control determination of such a case. *Id.*

granted. (Order (Doc. # 12).) Accordingly, Williams's Complaint and Motion for Stay of Execution were also filed in this case. Williams sues the same Defendants as Powell.

As stated in his Complaint, Williams's § 1983 claims are as follows: (1) that the ADOC's method of inducing and maintaining loss of consciousness and sensation prior to execution, use of chemicals that cause severe pain in the process of causing death, and failure to retain qualified medical personnel to administer the ADOC's chosen chemicals, violate his right to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution; and (2) the ADOC's failure to provide notice of and opportunity to comment on its protocols, procedures, and training involved in the execution process violates his right to due process under the Fifth and Fourteenth Amendments. (Williams's Compl. ¶¶ 46-48.) In his prayer for relief, Williams asks this court to (1) enter a declaratory judgment that Defendants' anesthesia and execution procedures violate his right to be free of cruel and unusual punishment; (2) enjoin Defendants from executing him with anesthesia and execution procedures that violate his right to be free of cruel and unusual punishment; and (3) require the ADOC to provide notice, presumably to the death row inmate, of at least 90 days, presumably prior to the

execution date, of the execution protocol and procedures for conducting executions. (Williams's Compl. "Prayer for Relief").)

Williams's Motion for Stay of Execution asks this court to (1) stay the execution date currently scheduled for May 19, 2011; (2) require the state to "meaningfully" disclose how it intends to execute Williams; and (3) grant Williams an evidentiary hearing "to ensure the State's revised protocol complies with all medical, statutory, regulatory, and constitutional requirements." (Williams's Mot. for Stay 2-3.)

Alabama's replacement of sodium thiopental with pentobarbital in the three-drug lethal injection sequence underlies the bulk of Williams's suit. Alabama's confidential Execution Procedures protocol[2] is a twenty-one page written document including four annexes.[3]   Annexes C and D relate to lethal injection.   Annex C contains detailed instructions to the IV (intravenous) team.   Annex D relates to

_____

[2] The court ordered the protocol to be submitted for *in camera* review.  By separate Order, the protocol will be made a part of the record under seal for only the use of this court and the federal appellate courts.

[3] On May 14, 2011, an Order was entered directing Defendants to confirm or deny the court's assumption that the Execution Procedures protocol reviewed *in camera* "are the new procedures and that the two-paragraph asterisk provision on page ten is the only change in the old procedures."  (Order (Doc. # 10, at 2 n.1).)  Defendants confirmed to the court in a timely fashion that the only change in the new Execution Procedures is to allow for the use of pentobarbital if sodium thiopental is unavailable, which resulted in the insertion in the Execution Procedures of multiple references to "pentobarbital."  Defendants made essentially the same representation to the Alabama Supreme Court in the earlier litigation.  (*See* Doc. # 9, Ex. 2, at 3 n.1.)

syringe preparation, with alternate instructions for use of sodium thiopental and pentobarbitol. Following is a summary of the protocol insofar as it relates to the issues raised here.

Two IV lines are established, with a physician on call to perform a central line procedure if intravenous access cannot be established. The prisoner is also connected to a heart monitor. The protocol calls for the administration of three drugs in a specific sequence, beginning with either sodium thiopental, or in case of its unavailability, pentobarbitol, with an initial injection of 2.5 grams. A team member physically assesses the consciousness of the inmate after the initial injection, by applying graded stimulation. A backup of another 2.5 grams of the initial drug is available for administration in the event there is evidence of consciousness, to be applied in the second IV line. After the inmate is documented to be unconscious, the second and third drugs are administered.

According to the affidavits of Warden Anthony Patterson, who has presided over seven executions, and former warden Grant Culliver (Patterson & Culliver Affs. (Exs. E & F to Defs.' Opp. to Mot. for Stay), who presided over twenty executions, an alternate IV line has never been used, and all the executions proceeded without mishap and without evidence of pain on the part of the inmate. With this background, the court turns to the discussion.

# V.  DISCUSSION

The issue is whether Williams has satisfied his burden of establishing that he is entitled to a stay of the execution of his death sentence.  Resolution of this issue requires consideration of whether (1) Williams delayed unnecessarily in bringing his claims, (2) there is a substantial likelihood of success on the merits of his specific constitutional claims, (3) a stay is necessary to prevent irreparable injury, (4) the threatened injury outweighs the harm the stay or injunction would cause, and (5) a stay would serve the public interest.  For the reasons to follow, these factors weigh against a stay, principally on the basis that Williams has not shown a substantial likelihood of success on the merits.

## A.    **Inexcusable Delay**

Defendants take the position that Williams is guilty of inexcusable delay in bringing this action.  If that is so, a strong equitable presumption against a stay comes into play if the court finds the action "'could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay.'"  *Hill*, 547 U.S. at 584 (quoting *Nelson*, 541 U.S. at 650).  No doubt, Williams could have filed this action several weeks ago, simultaneously with his filing of a petition for stay of execution with the Alabama Supreme Court on essentially the same grounds.  This delay is chargeable to Williams.  Perhaps he could have filed several months ago

when it became evident that, at some point soon, sodium thiopental would not likely be available and the protocol would have to be changed.  However, the court is not prepared to say that there would have been sufficient time to consider the merits of the case without a stay even if it were filed several months ago.  Accordingly, this analysis proceeds *without* the strong equitable presumption against entry of a stay, a presumption which arises because of inexcusable delay.

**B.**    **Substantial Likelihood of Success on the Merits**

Williams has not demonstrated a substantial likelihood of success on the merits on either his Eighth Amendment cruel and unusual punishment claim or his Fifth Amendment and Fourteenth Amendment Due Process claims.

### *1.    Eighth Amendment Right to Be Free From Cruel and Unusual Punishment*

Williams's first cause of action challenges the state of Alabama's lethal injection procedure as insufficient to "induc[e] and maintain[ ] loss of consciousness and loss of sensation prior to execution," thus, "caus[ing] severe pain in the process of causing death."  (Williams's Compl. ¶ 46.)   The complaint's factual allegations and arguments advanced in the motion for stay elucidate that Williams's challenge is to the state's substitution of pentobarbital for sodium thiopental as the first of the three-drug sequence used in lethal injections.  (*See, e.g.*, Williams's Compl. ¶ 25.)

"The Eighth Amendment to the Constitution, applicable to the States through the Due Process Clause of the Fourteenth Amendment, provides that '[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.'" *Baze v. Rees*, 553 U.S. 35, 47 (2008) (internal citation omitted). *Baze* governs the substantive Eighth Amendment standards and, thus, is instructive on the question whether Williams has shown a substantial likelihood of success on the merits on the Eighth Amendment claim. *Baze* involved a condemned state prisoner's Eighth Amendment challenge to Kentucky's protocol for lethal injections, at a time when Kentucky and at least twenty-nine other states used sodium thiopental as the first drug in a three-drug protocol, followed by pancuronium bromide and potassium chloride. *See id.* at 44. The condemned prisoners alleged that there was "a significant risk that the procedures w[ould] not be properly followed – in particular, that the sodium thiopental w[ould] not be properly administered to achieve its intended effect – resulting in severe pain when the other chemicals [were] administered." *Id.* at 50. The Supreme Court rejected the claim.

Where an Eighth Amendment cruel and unusual punishment claim alleges the risk of future harm, "the conditions presenting the risk must be '*sure or very likely* to cause serious illness and needless suffering,' and give rise to 'sufficiently imminent dangers.'" *Id.* (quoting *Helling v. McKinney*, 509 U.S. 25, 33, 34-35 (1993)

(emphasis added)).  "[T]o prevail on such a claim there must be a 'substantial risk of serious harm,' an 'objectively intolerable risk of harm' that prevents prison officials from pleading that they were 'subjectively blameless for purposes of the Eighth Amendment.'"  *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 842, 846 & n.9 (1994)).  The Supreme Court acknowledged that this standard imposed a "heavy burden" on the plaintiffs to show that Kentucky's procedures were "cruelly inhumane."  *Id.* at 53.

Applying those standards, the Supreme Court initially observed that "it [was] difficult to regard a practice as 'objectively intolerable' when it [was] in fact widely tolerated," as in the case of lethal injection, which was sanctioned and the preferred method of execution in thirty-six states.  *Id.* at 53.  It held that the plaintiffs did not show that "the risk of an inadequate dose of the first drug [was] substantial" or that Kentucky was required "to adopt the untested alternative procedures" urged by the plaintiffs.  *Id.* at 54.  The *Baze* Court also indicated that the standard it was announcing would resolve other challenges; for example, it said that

> [a] stay of execution may not be granted on grounds such as those asserted here unless the condemned prisoner establishes that the State's lethal injection protocol creates a demonstrated risk of severe pain.  He must show that the risk is substantial when compared to the known and available alternatives.  A State with a lethal injection protocol substantially similar to the protocol we uphold today would not create a risk that meets this standard.

*Id.* at 61.

That Williams has not shown a substantial likelihood of success on the merits under the *Baze* standard is apparent both from what Williams does and does not argue. First, the absence of any discussion at all of the *Baze* standard in Williams's motion for stay of execution is glaring. The closest Williams comes to addressing the *Baze* standard is in a heading in the brief's outline that reads, "What is known of the State's Revised protocol indicates that Williams will likely suffer needless, undue, and excruciating pain during execution." (Williams's Mot. for Stay 10 (emphasis and capitalization omitted).)  And, that is not even the correct standard.[4]  The *Baze* standard requires proof that the changeover from sodium thiopental to pentobarbital is "'*sure or very likely* to cause serious illness and needless suffering.'" *Baze*, 553 U.S. at 50.

Second, Williams does not identify any instance where a state's method of lethal injection involving pentobarbital has been found to be unconstitutional under the Eighth Amendment. In an attempt to show the risks of using pentobarbital as a substitute for the sodium thiopental, Williams attaches to his complaint the medical opinion of David B. Waisel, M.D., that the state of Oklahoma's lethal injection

---

[4] In fact, this section of Williams's motion is devoid of a single citation to any case authority. (Williams's Mot. for Stay 10-12.)

protocol is insufficient to protect condemned prisoners "from awareness while being paralyzed and receiving potassium chloride," given that state's addition of pentobarbital to the protocol.  (*See* Expert Report of David B. Waisel, MD, Oct. 29, 2010, at 3 (Williams's Compl., Ex. D).)  A variety of opinions are expressed in that report, such as that pentobarbital is "less lipid soluble than sodium thiopental," and that the "use of pentobarbital as an agent to induce anesthesia is not FDA approved." (Waisel Report ¶¶ 6, 18.)

Besides the obvious fact that the Dr. Waisel's report is not addressed to the state of *Alabama*'s lethal injection protocol,[5] Williams fails to mention that Dr. Waisel's opinion was rejected in the case in which his report was offered.  *See Pavatt v. Jones*, 627 F.3d 1336 (10th Cir. 2010), *cert. denied*, 131 S. Ct. 974 (2011).  In *Pavatt*, the Tenth Circuit rejected an Eighth Amendment challenge to the state of

---

[5] The court is aware that Williams alleges he does not have access to Alabama's confidential protocol.  Upon review of the protocol *in camera*, the court finds that the state of Alabama has accurately represented in briefing the relevant parts of the protocol.  Moreover, the court has considered Williams's arguments that he is entitled to a copy of the protocol, and finds those arguments unpersuasive for purposes of demonstrating a substantial likelihood of success on the merits.  Williams does not cite any authority from any court in Alabama – federal or state – that has required the state of Alabama to disclose its lethal injection protocol as a constitutional or other requirement, and the court is aware of no such authority.  In fact, in the context of examining whether a condemned inmate unreasonably delayed in filing his § 1983 claim, the Eleventh Circuit has rejected the argument that the confidentiality of Alabama's lethal injection protocol precluded the inmate from filing his challenge to the method of execution any earlier.  *See Grayson v. Allen*, 491 F.3d 1318, 1323 (11th Cir. 2007).  It is noted also that there is no allegation or argument from Williams that he has ever requested from any state official a copy of the confidential lethal injection protocol.  (*See, e.g.*, Defs.' Opp. to Mot. for Stay 42-43.)

Oklahoma's "planned lethal injection procedure, *i.e.*, its planned substitution of pentobarbital for sodium thiopental." *Id.* at 1338. In doing so, the Tenth Circuit held that the district court's findings were amply supported by the testimony from the defendant's expert, Dr. Dershwitz, who had rebutted Dr. Waisel's conclusions, and who is the same expert relied upon by Defendants in this lawsuit.[6] *See id.* at 1340 (outlining Dr. Dershwitz's opinions).

Moreover, concerns about Dr. Waisel's opinions are heightened, not subdued, by the countervailing expert testimony from Dr. Mark Dershwitz, whose affidavit and curriculum vitae also are part of the record in this case. Dr. Dershwitz, a board certified anesthesiologist with a Ph.D. in pharmacology, opines "to a reasonable degree of medical certainty that there is an exceedingly small risk that a condemned inmate to whom 2,500 mg of pentobarbital is properly administered pursuant to the lethal injection protocol of the State of Alabama would experience any pain and suffering associated with the administration of lethal doses of pancuronium bromide and potassium chloride." (Dershwitz Aff. ¶ 14 (Ex. D).) He further opines that "[a]

---

[6] *Pavatt* involved an appeal from the district court's order denying the plaintiff's motion for a preliminary injunction. 627 F.3d at 1338. The ruling on the motion for preliminary injunction followed the district court's earlier order granting the plaintiff's motion for a stay of his execution. *See id.* at 1337-38. The value of *Pavatt* on the issue whether a stay should be entered in this case is negligible because the district court's reasons for granting the stay were neither under review nor set out in the *Pavatt* opinion. Additionally, the district court's reasoning is not embodied in a written opinion.

dose of 2,500 mg of pentobarbital will cause virtually all persons to stop breathing[,]" and that "virtually every person given 2,500 mg of pentobarbital will have stopped breathing prior to the administration of pancuronium bromide." (Dershwitz Aff. ¶ 12.) He concludes that "the administration of 2,500 mg of pentobarbital by itself would cause death to almost everyone." (Dershwitz Aff. ¶ 12.)

By noting these competing experts' opinions, the court is not attempting to embroil itself in a medical controversy for purposes of resolving the motion for a stay. The court, however, finds that Williams cannot meet his burden of demonstrating a substantial likelihood of success on the merits, given the "heavy burden" he ultimately bears to prove his Eighth Amendment claim, *Baze*, 553 U.S. at 53, merely by offering an expert's medical opinion about another state's lethal injection protocol that has been rejected by a federal court. Notably, this report, although attached to the complaint, is not cited in Williams's brief as supporting authority for his motion for a stay.

Third, Williams asks this court to find that he has a substantial likelihood of success on the merits based upon assertions that Defendants failed to provide information justifying its "switch to pentobarbital," that "something is fishy," and that there are too "many unresolved questions," "uncertaint[ies]" and "secrec[ies]" surrounding the state of Alabama's "switch" from sodium thiopental to pentobarbital.

(Williams's Mot. for Stay 4, 15; Williams's Compl. ¶ 45; Waisel Report. ¶ 14.) Whatever merit these contentions may have, they reflect an improper shifting of the burden to Defendants to prove that Williams is not entitled to a stay.  It is, however, Williams who bears the burden of producing evidence "demonstrat[ing] risk of severe pain." *Baze*, 553 U.S. at 61.  He cannot do so on speculation and assertions attacking the adequacy of Defendants' demonstration, and he has failed to do so otherwise.[7]

Fourth, Williams implies that the Eighth Amendment requires Defendants to "retain qualified medical personnel to administer its chosen chemicals." (Williams's Compl. ¶ 47.)  This argument gets him no closer to a demonstration of a substantial likelihood of success on the merits.  "The Eighth Amendment prohibits indifference to substantial risks[;] it does not demand particular protocols or the employment of medical professionals." *Emmett v. Johnson*, 489 F. Supp. 2d 543, 552 (E.D. Va. 2007); *see also Hamilton v. Jones*, 472 F.3d 814, 816 (10th Cir. 2007) ("[T]he Constitution does not require the use of execution procedures that may be medically optimal in other contexts.").  Not only did *Baze* confirm these principles, but there is no evidence that in any legal injection execution conducted in the state of Alabama,

---

[7] Other of Williams's contentions also are insufficient to sustain his burden.  For instance, Williams emphasizes that the manufacturer of pentobarbital has pronounced that it is opposed to its drug being used for executions, but fails to demonstrate how that fact is in any way relevant to the issues and his burden.

a complication arose resulting from errors in the administration of the legal injection protocol. To the contrary, there is evidence that in all the lethal injection executions carried out at Holman Correctional Facility, the executions have proceeded "smoothly" and "without mishap," that there have been no indications that the inmates were experiencing pain, and that it has not been necessary to use alternate intravenous lines to complete the executions. (Patterson Aff. ¶¶ 5, 8; Culliver Aff. ¶¶ 3, 4.) Measured against the demands of the Eighth Amendment, there is little chance that Williams will prevail on his constitutional claims.

Fifth, Williams's allegations that Defendants could choose "alternative chemicals" for executions, but that they choose not to do so (Williams's Compl. ¶ 47), stop well short of complying with the Eighth Amendment standard of *Baze*. Williams does not proffer any alternative procedure, and, if he had, he would have to show that the procedure is "feasible, readily implemented, and in fact significantly reduce[s] a substantial risk of severe pain." *Baze*, 553 U.S. at 52. This he has failed to do, through either allegation, argument, proffer or evidence.

### 2.   *Fourteenth and Fifteenth Amendments Right to Due Process*

As presented in Williams's motion, his Fourteenth Amendment and Fifth Amendment Due Process claim lack clear contours and bleed into the Eighth Amendment claim. (Williams's Mot. for Stay 8-9.) Defendants also have difficulties

in deciphering the nature of the claim.  (Defs.' Opp. to Mot. for Stay 41-43.)  Turning back to the complaint in search of clarity, there it is alleged that "[a]bsent notice of the protocols, procedures, and training involved in the execution process, and the opportunity to comment on these provisions, the State of Alabama is in violation of [ ] Williams' right to due process of law under the Fifth and Fourteenth Amendments to the United States Constitution."  (Williams's Compl. ¶ 49.)

Both the Fifth Amendment and Fourteenth Amendment due process clauses "were designed to protect individual liberties from the same types of government infringement."  *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 945 (11th Cir. 1997).  The Fifth Amendment's Due Process Clause provides that "[n]o person shall be . . . deprived of life, liberty, or property without due process of law."  U.S. Const. amend. V.  The Fourteenth Amendment's Due Process Clause mirrors that language, *see Republic of Panama*, 119 F.3d at 945, providing that "[n]o state shall . . . deprive any person of life, liberty or property, without due process of law."  U.S. Const. amend. XIV, § 1.

There is, however, an important distinction between the two Due Process Clauses.  The Fifth Amendment's Due Process Clause restrains the federal government, not state government.  *See Buxton v. Plant City*, 871 F.2d 1037, 1041 (11th Cir. 1989) ("The [F]ifth [A]mendment to the United States Constitution

23

restrains the federal government, and the Fourteenth Amendment, section 1, restrains the states, from depriving any person of life, liberty or property without due process of law."). Defendants are state officials, and Williams offers no justification for the inclusion of a Fifth Amendment Due Process claim in the complaint. Indeed, the absence of any mention of the Fifth Amendment's Due Process Clause in Williams's reply is telling as to the claim's failing. Because no basis for liability has been shown for a Fifth Amendment Due Process claim, Williams cannot show a substantial likelihood of success on the merits of this claim.

As support for his Fourteenth Amendment Due Process claim, Williams relies upon *Nelson*, 541 U.S. at 647, and *In re Medley*, 134 U.S. 160, 173 (1890), arguing that he "is entitled to know how his execution will be conducted" (Williams's Mot. for Stay 9). That reliance is perplexing. *Nelson* implicated only the Eighth Amendment, and *Medley* involved a challenge to a statute under the *Ex Post Facto* Clause. These opinions do not stand for the propositions of constitutional law that Williams attempts to impart to their holdings. Williams cites no authority for his proposition that a condemned inmate has a due process right to receive notice and an opportunity to be heard when, as here, the shortage and now the ceased production

of sodium thiopental results in a substitution of pentobarbital.[8]  On this record and absent any persuasive argument or citation to relevant authority, Williams has not shown a substantial likelihood of success on the merits on his Fourteenth Amendment Due Process claim.

## C.   Irreparable Injury

If the stay of execution is denied, the consensus is that Williams's  execution will occur as scheduled.  However, the alleged irreparable injury is not the fact alone that Williams will die by execution.  That alone is not a cognizable constitutional injury.  *Baze*, 553 U.S. at 47.  The alleged irreparable injury lies in his assertion that, under present protocols, he may be conscious after being injected with pentobarbital and able to feel pain during the administration of the final two chemicals.  Given the failure of Williams to establish a substantial likelihood that he can succeed on his claim that the use of pentobarbital will "very likely . . . cause serious illness and needless suffering," *Baze*, 553 U.S. at 50, resulting in a substantial risk of serious

---

[8]  Contrary to Williams's urging, these opinions also do not stand for the proposition that "[u]nder the Eighth Amendment, a death row inmate must be given clear notice of how he will be executed."  (Williams's Reply 5.)  For instance, the issue in *Nelson* was "whether § 1983 [was] an appropriate vehicle for petitioner's Eighth Amendment claim seeking a temporary stay and permanent injunctive relief."  541 U.S. at 639.  The underlying Eighth Amendment claim did not attack the sufficiency of notice of the use of procedure, nor is it even clear that the Eighth Amendment would be the proper vehicle for such a claim.  Rather, the claim was whether "the so-called 'cut-down' procedure constituted cruel and unusual punishment and deliberate indifference to [the condemned inmate's] serious medical needs in violation of the Eighth Amendment."  *Id.* at 641.

pain, the irreparable injury is not actual and imminent. *See Siegel v. LePore*, 234 F.3d 1163, 1176-77 (11th Cir. 2000) (The irreparable injury "'must be neither remote nor speculative, but actual and imminent.'" (quoting *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 896 F.2d 1283, 1285 (11th Cir. 1990)). There is, therefore, not a sufficient showing of irreparable harm.

D.    **Relative Harms to the Parties and the Public Interest**

Williams points to the "potential harm to Mr. Williams" if an unconstitutional execution is carried out, that is, "an unacceptable risk of an excruciating death." (Williams's Mot. for Stay 16-17.) On the other hand, the State emphasizes that it has a "significant interest in meting out a sentence of death in a timely fashion," *Nelson*, 541 U.S. at 650, and that victims also have an interest in the timely enforcement of a sentence, *Hill*, 547 U.S. at 584. To interrupt this interest in finality by issuing a stay of execution at this point, upon a negligible showing of a substantial likelihood of success, would work a strong injustice to the "powerful and legitimate interest in punishing the guilty, an interest shared by the State and the victims of crime alike." *Calderon v. Thompson,* 523 U.S. 538, 556 (1998). The balance of harms and the public interest weigh against a stay of execution.

## VI.  CONCLUSION

For all of the above reasons, but in particular the unlikelihood that Williams will succeed on any of his claims, a stay of Williams's execution is not supported by law.[9]  Williams has not clearly carried the burden of persuasion in order to be entitled to a stay of execution.  *Hill*, 547 U.S. at 584.  Accordingly, it is ORDERED that Williams's motion for a stay of execution, filed May 13, 2011, is DENIED.

Entered this 16th day of May, 2011, at 3:32 p.m.

/s/ W.  Keith Watkins
UNITED STATES DISTRICT JUDGE

---

[9] In light of this finding, it is unnecessary to address all of the grounds raised by Defendants in opposition to the motion for a stay of execution and, in particular, Defendants' statute of limitations arguments.